UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. RONNIE L. STACKHOUSE, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. 09-CV-5739 |
| MARCUS HARDY, Warden, Statesville Correctional Center, | ) ) ) ) | Judge John W. Darrah |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner, Ronnie L. Stackhouse[1], proceeding *pro se*, has filed a Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254. For the reasons provided below, his Petition is denied.

## BACKGROUND

Ronnie L. Stackhouse was sentenced to a term of incarceration in the Illinois Stateville Correctional Center after a jury in the Circuit Court of Will County, Illinois, convicted him of first-degree murder and aggravated battery.

Petitioner does not challenge the statement of facts set forth in his state-court proceedings. The following facts are from the Illinois Appellate Court's order, denying Petitioner's post-conviction appeal:[2]

---

[1] Petitioner incorrectly spelled his last name (using "Strackhouse" instead of the correct "Stackhouse") on the face of his Petition for Writ of *Habeas Corpus*. The correct spelling is used in this opinion.

At trial Darryl Moore testified that he and Andre Anderson each drank between five and eight glasses of brandy at [Petitioner's] apartment on the night of

October 2, 2002. Sometime that evening [Petitioner] left his apartment building and walked to another building in the same complex. Moore and Anderson followed him across the street, where Moore asked why he had previously called Moore a "bitch." [Petitioner] said he did not have to "explain nothing" and pushed Moore, who responded by punching back. According to Moore, they "got into a little fight" and then [Petitioner] ran to his own apartment.

Moore and Anderson removed their shirts and stood at the gate outside [Petitioner's] apartment building. [Petitioner] emerged from the building and Moore raised his hands to fight, at which time someone yelled, "he has a knife." Moore then saw [Petitioner] raise "a long kitchen knife with ridges on the bottom." Moore and Anderson backed up, walking first and then running away. After running some distance, Moore looked back and saw [Petitioner] standing over Anderson swinging the knife. Anderson had apparently fallen and was kicking at [Petitioner] while bleeding from the leg. Moore ran back and knocked [Petitioner] away, receiving a cut to his arm in the process.

Diane Jeffries and another woman arrived in Jeffries' car and took Moore and Anderson to the hospital. En route they used a t-shirt to try and stop the bleeding from Anderson's leg.

Moore was treated at the hospital and discharged. Anderson, however, was admitted because of severe blood loss from a severed artery in his leg. The blood loss rendered him more susceptible to infection, and his leg was eventually amputated. He became increasingly sick and died 22 days after the stabbing. His death resulted directly from the knife wound to his leg.

Tristin Hill, Anderson's cousin, testified that he was walking to [Petitioner's] apartment complex at the time in question. His testimony largely corroborated Moore's testimony. He heard a woman scream and saw [Petitioner] carrying a "big" knife while chasing Anderson and Moore. When Anderson fell, [Petitioner] got on top of him swinging the knife at Moore. Anderson then tried to run but fell, and Hill stepped

---

² In a state court *habeas corpus* proceeding, a determination of a factual issue made by a state court shall be presumed correct. 28 U.S.C. § 2254(e)(1). The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*

between [Petitioner] and Anderson. When [Petitioner] came toward Hill and Anderson, Hill said, "that's enough." According to Hill's testimony, [Petitioner] then licked the knife and ran away. Diane Jeffries arrived in her car and took Anderson and Moore to the hospital. Hill did not see Moore or Anderson with any weapons.

Lawanda Finley was the person who screamed when she saw that [Petitioner] had a knife. She testified that [Petitioner] chased Moore and then chased Anderson when he could not catch Moore. Anderson was running when [Petitioner] first stabbed him. When Anderson fell to the ground, [Petitioner] stood over him and continued stabbing using a fist-type motion.

In response to leading questions by defense counsel on cross-examination, Finley agreed that [Petitioner] initially approached Moore and Anderson swinging the knife "wildly" and "recklessly." She did not observe the knife make contact with anyone at that time, although Moore may have been cut. Then Moore and Anderson ran. [Petitioner] gave chase and stabbed Anderson from behind, causing him to fall. [Petitioner] then continued stabbing Anderson several times as he lay on the ground.

[Petitioner] was arrested shortly after the incident when police officers found him behind a nearby building. He did not have a knife at the time. During a police interview, he told Detective Carlos Matlock that he left his apartment to smoke marijuana, and that Anderson and Moore followed him into a building across the street. Moore asked for a loan and swung at [Petitioner] when he refused to give the loan. [Petitioner] punched Moore, and Anderson then joined the fight. When [Petitioner] was struck in the head with a stick, he returned to his apartment and got a knife. A skirmish ensued in the parking lot, after which he ran to the nearby Des Plaines River and threw in the knife. He told Matlock that he only intended to scare Anderson and Moore because he thought they would attack him again. He admitted that he stabbed both men.

Cutrice Burley testified that she and her two children lived with [Petitioner] (her boyfriend) in October of 2002. She was also friends with Moore's sisters. Her testimony about the incident in the parking lot largely corroborated that of Moore, Finley, and Hill. Regarding the events preceding the fight, Burley testified that she was drinking with Moore and Anderson at [Petitioner's] apartment when Moore became upset about reports of [Petitioner] mistreating her. Moore said he and Anderson would beat [Petitioner] if it happened again. Later, while standing outside, they were joined by Moore's sister. Burley heard that [Petitioner] was at another woman's apartment in the complex, and she went with her friends to confront him [footnote omitted]. After the confrontation with

3

[Petitioner], Burley returned to their apartment. [Petitioner] returned as well but then left and went to Building 363. Anderson and Moore walked to that same building, and seven minutes later [Petitioner] ran back into his apartment with bloodshot eyes. Moore and Anderson came back from across the street, removed their shirts, and stood outside [Petitioner's] apartment building.

After the stabbing incident, [Petitioner] ran away and Burley found him behind a building. She told him to throw the knife in the river, and he told her to get his wallet from the apartment. Burley did not remember if [Petitioner] also asked her to get him some clothes. She returned to the apartment and found police officers there. During an interview that night, she told Detective Matlock that [Petitioner] planned to go to Chicago and sent her for a change of clothes to keep the police from recognizing him.

*People v. Stackhouse*, No. 3-07-0260 (Ill. App. Ct. 2009).

Petitioner was convicted of first-degree murder and aggravated battery on June 28, 2004, following a jury trial in the Circuit Court of Will County. *Id.* Petitioner was sentenced to consecutive prison terms of forty-five years for intentional first-degree murder and ten years for aggravated battery. *Id.* Petitioner appealed his sentence to the Illinois Appellate Court in 2006. The Appellate Court reduced Petitioner's aggravated battery sentence to five years, and his sentencing order was modified to award credit for pre-sentence custody. *People v. Stackhouse*, No. 3-04-0817 (Ill. App. Ct. 2006).

On March 6, 2007, Petitioner filed a *pro se* petition for state post-conviction relief pursuant to the Illinois Post-Conviction Hearing Act in the Will County Circuit Court. *See* 725 ILCS 5/122-1. In this *pro se* petition, Stackhouse alleged his appellate counsel provided ineffective assistance by failing to challenge the trial court's refusal to instruct the jury on involuntary manslaughter. *People v. Stackhouse*, No. 3-07-0260 (Ill. App. Ct. 2009). This petition failed. The trial court rejected his arguments as frivolous and patently without merit, and the Appellate Court affirmed the trial court's ruling. *Id.*

4

Petitioner filed a Petition for Leave to Appeal ("PLA") in the Illinois Supreme Court on February 24, 2009. This PLA alleged ineffective counsel on the part of Petitioner's appellate counsel by failing to challenge the trial court's refusal for an involuntary-manslaughter jury instruction. Petition for Leave to Appeal, *People v. Stackhouse*, No 108080 (Ill. 2009). On May 28, 2009, the Illinois Supreme Court denied the PLA. Order Denying PLA, *People v. Stackhouse*, No. 108080 (Ill. 2009).

The Petitioner moved for leave to file a successive post-conviction petition in the Circuit Court of Will County on August 14, 2009. Petitioner raised three claims in this petition.[3] On August 18, 2009, the Circuit Court denied this motion. On March 22, 2010, Petitioner filed another petition, seeking relief from judgment in the Circuit Court pursuant to Section 2-1401 of the Illinois Code of Civil Procedure. The Circuit Court dismissed this petition on May 24, 2010. Subsequently, Petitioner appealed the Circuit Court's judgments denying him leave to file successive post-conviction petitions and dismissing his Section 2-1401 petition. The Appellate Court consolidated the appeals and, on November 5, 2010, affirmed the Circuit Court's judgments and dismissal. Petitioner's appointed counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Motion to Withdraw, *People v. Stackhouse*, Nos. 3-09-0740, 3-10-0459. On November 5, 2010, the Appellate Court granted counsel's *Finley* motion and

---

[3] Petitioner asserted that these three claims could not have been raised in his previous petition because he was not appointed counsel to assist him in preparing his first petition and because he had only recently obtained a police report to support one of his claims. Petitioner argued: (1) appellate counsel was ineffective in not arguing on direct appeal that the trial court insufficiently responded to jury questions; (2) trial counsel was ineffective for failing to call an eyewitness to testify; and (3) trial counsel was ineffective for failing to call Petitioner to testify.

permitted counsel to withdraw from the Petitioner's case. *People v. Stackhouse,* Nos. 3-09-0740, 3-10-0459 (cons.) (Ill. App. Ct. 2010). Petitioner asserts on his petition for writ of *habeas corpus* that he has not filed a PLA from the Appellate Court's order denying him leave to file successive post-conviction petitions. Petition at 2.

On September 15, 2009, Petitioner filed the instant *pro se* Petition for *Habeas Corpus* relief in this Court under 28 U.S.C. § 2254. Petitioner asserted five claims:

> (1) his appellate counsel was ineffective because counsel failed to argue on direct appeal that the trial court should have presented an involuntary-manslaughter jury instruction;
> (2) his appellate counsel was ineffective for failing to argue on direct appeal that the trial court's response to a jury question was insufficient;
> (3) his trial counsel was ineffective for refusing to allow petitioner to testify;
> (4) his appellate counsel was ineffective for failing to argue on direct appeal that the trial court erroneously excluded the testimony of Cutrice Burley; and
> (5) his trial counsel was ineffective for failing to investigate a statement made to police by an unknown witness to the crime.

## LEGAL STANDARD

A federal court will not grant *habeas corpus* relief on any claim adjudicated on the merits by a state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A writ of *habeas corpus* may issue under the "contrary to" clause of 28 U.S.C. § 2254(d) by two means. First, the writ may issue if the state court applied a rule different from the governing law set forth by the United States Supreme Court. *Williams*

*v. Taylor,* 529 U.S. 362, 405 (2000) (*Williams*). Second, the writ may issue under the

"contrary to" clause if the state court decides a case differently than the United States

Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 406.

The court may issue a writ under the "unreasonable application" clause of §

2254(d) if the state court correctly identifies the governing legal principle of the

United States Supreme Court but unreasonably applies the principle to the facts of the

particular case. *Id.* at 407. The court may only issue a writ of *habeas corpus* if it

determines that the state court's application of federal law was "objectively

unreasonable." *Id.* at 365. This is a difficult bar for a petitioner to reach because

"unreasonable" is considered "something lying well outside the boundaries of permissible

differences of opinion." *McFowler v. Jaimet,* 349 F.3d 436, 447 (7th Cir. 2003) (citing

*Williams,* 529 U.S. at 411).

The burden of proof falls on the petitioner, who must show he is entitled to relief

under any theory. *Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002) (*per curiam*). The

federal court deferentially reviews the decision of the last state court. *Griffin v. Pierce,*

622 F.3d 831, 841 (7th Cir. 2010). State-court factual findings are presumed to be

correct unless the petitioner rebuts this presumption with "clear and convincing

evidence." *Schriro v. Landrigan,* 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C. §

2254(e)(1)).

Before seeking a writ of *habeas corpus* in federal court, a petitioner must first

exhaust all remedies available to him in state court. 28 U.S.C. § 2254(b)(1)(A). A

federal court is precluded "from reaching the merits of a *habeas* claim when either (1)

7

that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). To avoid the latter form of procedural default, the petitioner is required to assert his claim at every level in the state-court system, "including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (*O'Sullivan*)). A *habeas* petitioner who exhausts state-court remedies without properly asserting his federal claim at each state-court level has procedurally defaulted that claim. *Id.* "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan*, 526 U.S. at 848).

A petitioner may succeed despite procedural default with a demonstration of (1) cause for the default and prejudice or (2) that ignoring the default is necessary to prevent a fundamental miscarriage of justice. *Id.* In instances of procedural default, the first exception requires the petitioner to "show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (*McCleskey*), (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (*Murray*)). Once cause is established, "he must also show 'actual prejudice' resulting from the errors of which he complains." *McCleskey*, 499 U.S. at 493 (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982) (*Frady*)). Prejudice is established by

8

showing the violation of the petitioner's federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 at 170.

The second means for circumventing a procedural default – showing a fundamental miscarriage of justice – is a very narrow exception and requires a demonstration that the petitioner's claim caused the conviction of an innocent person. *McCleskey*, 499 U.S. at 468. To establish that a miscarriage of justice would result, the petitioner must show he is actually innocent of the offense for which he was convicted. *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995) (*Schlup*). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of … new evidence." *Id.* at 327.

## ANALYSIS

First, Petitioner's Claim One will be disposed of on its merits, as Petitioner failed to make a showing for *habeas* relief under either prong of the *habeas corpus* bases stated in 28 U.S.C. § 2254(d). Petitioner's other four claims for *habeas* relief are disposed of due to Petitioner's procedural default.

*Claim 1: Ineffective Appellate Counsel Relating to Involuntary Manslaughter Jury Instruction is Without Merit*

Petitioner first contends his appellate counsel's failure to argue on direct appeal that the trial court erred in refusing an involuntary-manslaughter jury instruction violated his right to effective counsel. To be granted a writ of *habeas* on this claim, Petitioner must show the Illinois Appellate Court decision on this claim meets one of two criteria

outlined in 28 U.S.C. § 2254(d) and discussed above. Petitioner has failed to do so;

therefore; his writ of *habeas corpus* is denied on this claim.

<u>The Illinois Appellate Court's Decision Was Not Contrary to, Or Involved an</u>

<u>Unreasonable Application of, Clearly Established Federal Law</u>

The Illinois Appellate Court reviewed the Petitioner's claim of ineffective counsel

relating to the refusal of the involuntary-manslaughter jury instruction using the well-

established test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)

(*Strickland*). *Strickland* requires Petitioner to show: (1) his appellate counsel's

performance fell below an objective standard of reasonableness, and (2) the deficient

performance of his counsel prejudiced the outcome of his case.[4] *Id.* Similar to *habeas*

reviews, under *Strickland*, claims of ineffective counsel are reviewed in a manner highly

deferential to counsel. *Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001).

For a federal *habeas* petitioner to succeed on an ineffective-assistance claim rejected on

the merits by the state court, he must clear a high bar. In cases like the one at present, the

question of § 2254(d) unreasonableness is reviewed in tandem with the *Strickland* test.

*Harrington v. Richter*, 131 S.Ct. 770 (2011).

In the instant case, the state appellate court reasonably applied the *Strickland* test

and rejected the Petitioner's claim of ineffective counsel – this decision was not contrary

to, or an unreasonable application of, clearly established federal law. As the state

appellate court explained, the Petitioner could only succeed on his claim of ineffective

---

[4] This element of the *Strickland* test requires the Petitioner to prove a reasonable probability that if the alleged error was not committed, the outcome of his case would have been different. *Strickland*, 466 U.S. at 699.

counsel if "counsel's failure to raise the disputed issue was both objectively unreasonable and prejudicial." *People v. Stackhouse*, No. 3-07-0260 (Ill. App. Ct. 2009). Consistent with the *Strickland* test, the state appellate court correctly held Petitioner's counsel was not ineffective because Petitioner could not demonstrate that his counsel's performance was deficient. The state appellate court properly applied *Strickland* to the evidence, finding it did not support an involuntary-manslaughter jury instruction and that Petitioner's appellate counsel was not deficient in failing to raise this issue. To reach this conclusion, the appellate court reviewed the trial evidence and decided the trial court was within its discretion to refuse an involuntary-manslaughter instruction.

Under the Illinois law applied in Petitioner's case, involuntary manslaughter is the unintentional killing of an individual through reckless acts. 720 ILCS 5/9-3. Murder, however, requires the defendant intended to kill or do great bodily harm, knew his acts would cause death, or knew his acts would create a strong probability of death or great bodily harm. 720 ILCS 5/9-1. If the evidence at trial showed a defendant *intended* to inflict great injury or death, the homicide cannot be considered involuntary manslaughter.

Moreover, the appellate court explained that at trial, the eyewitnesses to the murder testified that Petitioner chased Anderson, the victim, caught him, and stabbed him from behind, causing Anderson to fall to the ground. Petitioner continued stabbing Anderson with a fist-type motion as Anderson lay on the ground. This trial evidence clearly meets the element of intent of the Petitioner required for murder, rather than evidence of a reckless act, as required by unintentional manslaughter. Petitioner attempts to rebut this point with the testimony of one witness, Lawanda Finley, who stated at trial

11

that Petitioner swung his knife "wildly" and "recklessly." However, as the state appellate court noted, Finley also testified that Petitioner did not wound Anderson by swinging the knife wildly and only stabbed Anderson after first chasing him down. The evidence at trial showed Petitioner stabbed Anderson intentionally, rather than recklessly. The appellate court properly determined Petitioner's appellate counsel did not perform below an objective standard of reasonableness by not arguing the failure to give an involuntary-manslaughter jury instruction as grounds for reversal on appeal. Thus, Petitioner has not met the first part of the *Strickland* test.

The state appellate court also correctly applied the second part of the *Strickland* test, requiring that counsel's deficient performance prejudiced the outcome of the case. The state appellate court properly held Petitioner could not show he was prejudiced by his counsel's decision not to raise the involuntary-manslaughter jury instruction issue on direct appeal. The evidence discussed above overwhelmingly established Petitioner intended the consequence of his acts; there was no evidence that the stab wounds suffered by the victim were an unintended result of reckless conduct. Absent such evidence, it is not reasonably probable that appellate counsel's challenge to the trial court's refusal of an involuntary-manslaughter instruction would have succeeded. Petitioner also failed to meet the second requirement of the *Strickland* test for proving ineffective assistance of counsel.

Therefore, the state appellate court's appropriate application of the *Strickland* standard bars Petitioner from obtaining *habeas* relief under 28 U.S.C. § 2254(d)(1).

12

<u>The Illinois Appellate Court's Decision Was Not Based on an Unreasonable</u>

<u>Determination of the Facts in Light of Evidence Presented in the State Court Proceeding</u>

The state appellate court also did not deny Petitioner's claim of ineffective counsel based on an unreasonable determination of the facts presented at trial pursuant to 28 U.S.C. § 2254(d)(2). State-court factual findings are presumed correct unless the petitioner rebuts this presumption with clear and convincing evidence under 28 U.S.C. § 2254(e)(1). Again, Petitioner's primary evidence to show his appellate counsel was ineffective with regards to the involuntary-manslaughter jury instruction is the testimony of Lawanda Finley. Finley's testimony, discussed above, describing Petitioner swinging his knife "wildly" and "recklessly" prior to stabbing his victim repeatedly is not clear and convincing evidence to conclude that appellate counsel was ineffective in failing to appeal the trial court's refusal for an involuntary-manslaughter instruction. Rather, the state appellate court made a reasonable determination of the facts presented and properly rejected Petitioner's ineffective-counsel claim on this basis.

Petitioner's first claim, that his appellate counsel was ineffective by failing to raise the issue of an involuntary manslaughter jury instruction on appeal, fails. Petitioner's Petition for a Writ of *Habeas Corpus* on this claim is denied.

13

*Claims 2 through 5: Ineffective Appellate and Trial Counsel Claims are Procedurally*

*Defaulted*

The state argues Petitioner's remaining claims[5] are procedurally defaulted. Claims Two, Three, and Four were raised in Petitioner's motion for leave to file a successive post-conviction petition in the Circuit Court of Will County. Claim Five was raised in Petitioner's § 2-1401 petition for relief from judgment in the same court. These appeals were consolidated, and the appellate court affirmed the convictions. However, Petitioner did not file a PLA from this consolidated appeal. The law requires claims brought under a *habeas* petition to first be raised in **every** level of state court. Since these four claims were not raised in the Illinois Supreme Court through a PLA, they are procedurally defaulted. Petitioner admits he procedurally defaulted on Claims Two through Five but asks the Court to excuse his procedural bar to *habeas* relief.

Petitioner may avoid procedural default on these claims pursuant to either one of two exceptions by showing: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Murray*, 477 U.S. 478, 488. Petitioner has failed to show that either of these exceptions is applicable to his remaining claims.

---

[5] As stated above, Petitioner's other claims are: (2) his appellate counsel was ineffective for failing to argue on direct appeal that the trial court insufficiently responded to a jury question; (3) his trial counsel was ineffective for refusing to allow petitioner to testify; (4) his appellate counsel was ineffective for failing to argue on direct appeal that the trial court erroneously excluded the testimony of Cutrice Burley; and (5) his trial counsel was ineffective for failing to investigate a statement made to police by an unknown witness to the crime.

14

Petitioner has made no showing his claims should not be procedurally barred pursuant to the first *Murray* exception.

Instead, Petitioner argues in his Reply that he should be able to avoid procedural default because of a fundamental miscarriage of justice: the conviction of an innocent person. As Petitioner acknowledges, this very narrow exception applies only in rare and extraordinary cases. Petitioner must show he is actually innocent of the offense for which he was convicted.

In his Reply brief, Petitioner argues new evidence consisting of his own testimony, if offered at trial, and that of an "unknown witness" would have made it more likely than not that no reasonable juror would have found him guilty as required by the *Schlup* test. This argument is not persuasive. First, Petitioner has not shown why it is more likely than not that the testimony of a convicted felon (Petitioner) would have persuaded the jury at trial to acquit him. Petitioner's subjective assessment of the value of his testimony as to his mental state at the time of conduct is not "new evidence" to show that no reasonable juror would have convicted him. Second, Petitioner contends that an "unknown witness" would provide new evidence to establish his innocence. Petitioner argues that testimony from this unknown witness would have related information that decedent Anderson and battery victim Moore made "some sort of comments about wanting to fight and apparently upset [sic]." Reply at 13. This information from the unknown witness would merely corroborate the facts established at trial and would not provide information proving Petitioner's innocence. Petitioner fails

15

to show that introduction of this evidence would have made his acquittal more likely than not.

Petitioner has not demonstrated cause for and prejudice stemming from his procedural default to warrant *habeas* relief. He has also failed to establish that denial of relief will result in a fundamental miscarriage of justice. Petitioner is procedurally defaulted on Claims Two through Five, and *habeas corpus* relief on these claims is denied.

### Certificate of Appealability

"A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rules of Appellate Procedure 22. Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts. Seventh Circuit Rule 22(b) states: "In a *habeas corpus* proceeding in which detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a district court judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

To obtain a certificate of appealability under § 2253, a *habeas* petitioner must demonstrate the denial of a constitutional right. This requires that the petitioner show that reasonable jurists could debate whether the petition should have been resolved in a

16

different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (*Slack*). Where the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack* at 484. As noted above, the decision of Petitioner's appellate counsel not to raise the issue of the trial court's refusal for an involuntary-manslaughter jury instruction did not violate the *Strickland* test. Thus, Petitioner has not shown reasonable jurists would find the foregoing assessment of Claim One debatable or wrong.

Denying the certificate of appealability as to claims dismissed on procedural grounds is more complicated. Typically, when a *habeas* petition is dismissed on procedural grounds, a district court can issue a certificate of appealability if the underlying issue of the violation of a constitutional right has not been reached. To be granted the certificate of appealability in this situation, the petitioner must show that jurists of reason could debate whether the petition states a valid claim of the denial of a constitutional right. *Slack* at 484. The petitioner must also show that jurists of reason could debate whether the district court was correct in its procedural ruling. *Id.* However, as is the case here, where a plain procedural bar is present and a district court correctly invokes it to dispose of those claims, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. *Id.*

17

Petitioner has failed to make a substantial showing of the denial of a

constitutional right in the instant petition. Accordingly, a certificate of appealability shall

not issue.

## CONCLUSION

For the reasons stated above, Ronnie L. Stackhouse's Petition for Writ of *Habeas*

*Corpus* pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability is not

issued.

Date: _10-17-11_

John W. Darrah
John W. Darrah
United States District Court Judge

18